**John R. CARTER, d/b/a Bay City Foundry Co., Plaintiff-Appellant,**

v.

**CMTA–MOLDERS & ALLIED HEALTH AND WELFARE TRUST, etc., et al., Defendants-Appellees.**

**No. 83–2104.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 16, 1984.

Decided July 3, 1984.

Henry D. Lederman, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for plaintiff-appellant.

Douglas M. Moore, Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., for defendants-appellees.

Before WALLACE, FLETCHER and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

John R. Carter, the sole proprietor of Bay City Foundry Company, appeals the summary judgment entered in favor of the defendants, employee health and welfare and pension trust funds. Carter argues that the contributions he made to the funds for a five and-a-half-year period during which he had not signed a collective bargaining or trust agreement should be refunded to him because (1) the contributions were "illegal" under section 302 of the Labor Management Relations Act, 29 U.S.C. § 186, and should not be retained by the trust funds, and (2) he is entitled to restitution. Carter's arguments are rejected and the district court's judgment is affirmed, albeit on other grounds.

The district court's summary of the facts is not disputed by the parties, and can be found at 489 F.Supp. 704 (N.D.Cal.1980) (*Carter I*) and 563 F.Supp. 244 (N.D.Cal. 1983) (*Carter II*). Only a summary of the history of this litigation will be given, and relevant facts will be stated in the course of discussion.

In its first decision the district court entered summary judgment for the trusts, finding that Carter had impliedly assumed the terms of his predecessor's collective bargaining and contribution or subscriber agreements, including the obligation to contribute to the trusts. *Carter I*, 489 F.Supp. at 708–09. This court reversed, 685 F.2d 440 (9th Cir.1982), finding there were material facts in dispute as to whether Carter impliedly assumed the obligation to contrib-

ute to the trusts, thus precluding an entry of summary judgment. Upon remand "[t]he parties [were] unable to identify any disputed material facts ... [and] resubmitted the matter upon stipulation that it [was] ripe for summary judgment." *Carter II*, 563 F.Supp. at 246. This time, the district court concluded that Carter was not bound to his predecessor's contracts as a matter of law and that he had not impliedly consented to be bound by the contracts either. *Id.* at 246–47. Despite finding no assumption of the substance of the agreements, the court declined to order repayment because to do so would "frustrate the policy to promote and protect collective bargaining under the Labor Relations Act." *Id.* at 248.

## DISCUSSION

*Standard of Review.* A party is entitled to summary judgment only when no issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A grant of summary judgment is reviewed *de novo, National Union Fire Insurance Co. v. Argonaut Insurance Co.*, 701 F.2d 95, 96 (9th Cir. 1983), and all evidence and inferences are viewed in a light most favorable to the party opposing the motion. *Bricklayers' Health & Welfare Trust Fund v. Brick Masons' Health & Welfare Trust Fund*, 656 F.2d 1387, 1391 (9th Cir.1981). A decision will be upheld if it is correct, even if the lower court gave the wrong reason for the result. *Keniston v. Roberts*, 717 F.2d 1295, 1300 n. 3 (9th Cir.1983).

 The district court reached the correct result in this case despite seemingly contradictory factual findings regarding the assumption of contractual liability because that issue is not crucial to Carter's claim. In cases involving successor employers, the Supreme Court has made a distinction between the duty to bargain and the obligation to comply with a predecessor's contractual obligations. *See, e.g., NLRB v. Burns Security Services*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972) (duty to bargain); *John Wiley & Sons v. Livingston*, 376 U.S. 543, 84 S.Ct.

909, 11 L.Ed.2d 898 (1964) (enforceability of collective bargaining contract arbitration provisions against successor employer). The duty to bargain arises when "the bargaining unit remains unchanged and a majority of the employees hired by the new employer are represented by a certified bargaining agent." *NLRB v. Edjo, Inc.*, 631 F.2d 604, 606–07 (9th Cir.1980). In cases in which a labor organization represents a majority of the work force under the new employer, irrespective of whether "a successor employer is bound by its predecessor's contract, [the successor] must not institute terms and conditions of employment different from those provided in its predecessor's contract, at least without first bargaining with the employees' representative." *NLRB v. Burns Security Services*, 406 U.S. at 293, 92 S.Ct. at 1585. The successor may not unilaterally change conditions of employment without bargaining to impasse even if its predecessor's contract has expired. *Id.* at 293–94, 92 S.Ct. at 1584–85. *See NLRB v. Edjo, Inc.*, 631 F.2d at 607–08.

When Carter bought the business, a union contract covering the employees' health and welfare and pension plans was in effect. Carter told the employees, four of six of whom were employees under the old owner and still represented by the union, that he would not change the terms and conditions of their employment, which he did not. When union and trust fund officials approached him about signing new agreements, he declined to sign and so, as the district court found, he did not expressly assume substantive contractual obligations. Nevertheless, he told his employees that "they would continue to be paid at the rates then in effect and that their pension and health and welfare benefits would be maintained at the same levels as before." *Carter I*, 489 F.Supp. at 705. When billed for trust fund contributions, Carter paid the bills in full, in part from deduction from pay checks and in part by direct contribution. *Id.* Accordingly, he maintained the status quo and continued to make the

trust fund payments under the expired agreements.

Carter argues that his contributions to the funds were illegal because they were made in the absence of a "written agreement," which is required by section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5). That section exempts from the ban on employer payments to employee organizations or representatives payments made "to a trust fund established by such representative, for the sole and exclusive benefit of the employees ... *Provided*, That ... (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer. ... " (emphasis in original).

The argument that employer trust fund contributions become illegal under section 302 upon expiration of the underlying agreements has been consistently rejected by this circuit in several recent cases. *American Distributing Co., Inc. v. NLRB*, 715 F.2d 446, 451–52 (9th Cir.1983); *Producers Dairy Delivery Co. v. Western Conference of Teamsters Pension Fund*, 654 F.2d 625, 627 (9th Cir.1981); *Peerless Roofing Co. v. NLRB*, 641 F.2d 734, 736 (9th Cir.1981). *Accord Hinson v. NLRB*, 428 F.2d 133 (8th Cir.1970). These decisions are based on the employer's duty to bargain with a certified employee bargaining agent which is imposed by the National Labor Relations Act, 29 U.S.C. § 158(a)(5), and on the corresponding duty to refrain from unilaterally changing the terms and conditions of employment without first bargaining with the employees' representative. *NLRB v. Katz*, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962).

■ The payments Carter made to the defendant trust funds did not violate section 302 for lack of a written agreement because, unlike the situation in *Moglia v. Geoghegan*, 403 F.2d 110 (2d Cir.1968), *cert. denied*, 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969), relied upon by Carter, Carter's predecessor had executed the necessary agreements. The payments were made pursuant to written, albeit expired collective bargaining and trust agreements. When Carter bought the business, he simply maintained the status quo for five and a half years pending decertification of his employees' bargaining representative, and thereby avoided the "uncertainty and turmoil" which might have followed a change of conditions. *See NLRB v. Burns Security Services*, 406 U.S. at 291, 92 S.Ct. at 1584. For that five and a half year period, his employees were covered as the contributions were legal and did not violate section 302(c)(5) of the Labor Management Relations Act. 29 U.S.C. § 186(c)(5).

■ The district court, after concluding that Carter did not assume the obligation to contribute to the trusts, declined to order a refund, holding that a refund would frustrate labor policy. *Carter II*, 563 F.Supp. at 248. The rationale and policies underlying the duty to bargain and the obligation to maintain the status quo pending impasse would be undercut if an employer could outwardly maintain the status quo and only later, after the threat of or opportunity for concerted action has passed, retroactively change the terms of employment. *See NLRB v. Burns Security Services*, 406 U.S. at 291, 92 S.Ct. at 1584; *Producers Dairy*, 654 F.2d at 628; *Peerless Roofing Co.*, 641 F.2d at 736. Both Carter and his employees received full coverage under the trust plans to which Carter contributed while the issue of union representation was resolved. The district court was correct in declining to order a refund.

■ Finally, we reject Carter's argument that the trust funds are precluded from arguing that the fund payments were legally made on the basis of Carter's duty to bargain because the funds failed to file a cross-appeal. The funds' argument is made in support of the judgment below and is "no more than 'an attack upon the reasoning of the lower court,' and as such require[s] no cross-appeal." *Massachusetts Mutual Life Ins. Co. v. Ludwig*, 426 U.S. 479, 481, 96 S.Ct. 2158, 2159, 48 L.Ed.2d 784 (1976) (per curiam). The funds

have not attempted to enlarge their rights or lessen Carter's rights because they have not sought to modify the judgment to cover the period after Carter ceased making payments but before union decertification.

The district court judgment is AFFIRMED.

WALLACE, Circuit Judge, concurring:

I concur only in the majority's result of affirming the district court. I believe the majority has improperly analyzed the problem and come to the wrong conclusion about the legality of Carter's payments to the trust. Although the issue is not free from doubt, the approach and reasoning in the district court's opinion in *Carter II* is, to me, more persuasive. *See Carter v. CMTA-Molders & Allied Workers Health & Welfare Trust*, 563 F.Supp. 244 (N.D. Cal.1983). Therefore, I would affirm essentially for the reasons stated by the district judge.