Opinion
SIMS, J.
—Defendant City of Stockton (City) appeals from a judgment granting a peremptory writ of mandate ordering it to pay all necessary em *817 ployee health insurance premiums during the pendency of labor negotiations. City claims it was not required to pay a $19 per employee premium increase and was justified in unilaterally deducting that amount from employee paychecks because in so doing it was merely maintaining the “status quo” as required by the Meyers-Milias-Brown Act (MMBA). (Gov. Code, § 3500 et seq.)[1] Concluding City’s actions altered the status quo in violation of the MMBA, we affirm.
Factual and Procedural Background
In November 1981, City and plaintiff San Joaquin County Employees Association, Inc., executed memoranda of understanding (MOU’s) covering two bargaining units represented by plaintiff. The MOU’s provided, in identical language, that “For the term of this Memorandum of Understanding, the City shall pay premiums that are necessary and sufficient to provide substantially equivalent benefits for hospitalization, medical, dental/orthodontic and vision benefits that were in effect January 1, 1981.”
On April 29, 1983, plaintiff timely notified City that it intended to amend and modify the MOU’s. Negotiations began. In the trial court both parties contended, and the trial court found, that the MOU’s expired as of June 30, 1983.
Sometime after June 30, 1983, the cost of insurance rose by $19 per employee per month. On or about July 15, 1983, while negotiations on new MOU’s were still in progress and prior to any impasse in negotiations, City notified its employees that it would withhold the $19 from each employee’s paycheck beginning August 7, 1983.
On September 13, 1983, plaintiff obtained a peremptory writ of mandate commanding City, pending completion of the negotiating process, “to pay all premiums necessary to provide substantially equivalent benefits for hospitalization, medical, dental/orthodontic and vision benefits that were in effect January 1, 1981, for the employees of [the two bargaining units] retroactive to August 1, 1983.” City appeals.
Discussion
I
The MMBA (§ 3500 et seq.) codifies California’s recognition of the right of certain public employees to bargain collectively with their govern *818 ment employers. (Vernon Fire Fighters v. City of Vernon (1980) 107 Cal.App.3d 802, 811 [165 Cal.Rptr. 908]; see People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach (1984) 36 Cal.3d 591, 597 [205 Cal.Rptr. 794, 685 P.2d 1145].)
Section 3505 provides in pertinent part that “The governing body of a public agency, or such boards, commissions, administrative officers or other representatives as may be properly designated by law or by such governing body, shall meet and confer in good faith regarding wages, hours, and other terms and conditions of employment with representatives of such recognized employee organizations, as defined in subdivision (b) of Section 3501, and shall consider fully such presentations as are made by the employee organization on behalf of its members prior to arriving at a determination of policy or course of action.” (Italics added.)
Section 3505 requires City to meet and confer in good faith with employee representatives prior to making any unilateral change in the level of wages or benefits. (Vernon Fire Fighters v. City of Vernon, supra, 107 Cal.App.3d at p. 823; see Grodin, Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts (1972) 23 Hastings L.J. 719, 753-756.)
City does not dispute its duty to maintain the status quo during negotiations respecting the insurance benefits in question but contends it did so by spending the same amount of money to provide the benefits after expiration of the MOU’s. We conclude federal cases interpreting the National Labor Relations Act (NLRA) (29 U.S.C. § 141 et seq.) demonstrate City’s argument is not well taken.
Cases interpreting the NLRA may properly be referred to for such enlightenment as they may render in our interpretation of the MMB A. (Fire Fighters Union v. City of Vallejo (1974) 12 Cal.3d 608, 617 [116 Cal.Rptr. 507, 526 P.2d 971]; Vernon Fire Fighters v. City of Vernon, supra, 107 Cal.App.3d at p. 815; see International Brotherhood of Electrical Workers v. City of Gridley (1983) 34 Cal.3d 191, 202-203 [193 Cal.Rptr. 518, 666 P.2d 960]; Long Beach Police Officer Assn. v. City of Long Beach (1984) 156 Cal.App.3d 996, 1007 [203 Cal.Rptr. 494]; Independent Union of Pub. Service Employees v. County of Sacramento (1983) 147 Cal.App.3d 482, 488 [195 Cal.Rptr. 206].) Under section 8(a)(5) of the NLRA (29 U.S.C. § 158(a)(5)), after the expiration of a collective bargaining agreement, the duty to bargain collectively requires the employer to maintain the status quo without taking unilateral action as to wages, working conditions, or benefits until negotiations reach an impasse. (Producers Dairy Delivery *819 v. Western Conference (9th Cir. 1981) 654 F.2d 625, 627; Peerless Roofing Co., Ltd. v. N.L.R.B. (9th Cir. 1981) 641 F.2d 734, 736; Clear Pine Mouldings, Inc. v. N.L.R.B. (9th Cir. 1980) 632 F.2d 721, 729; N.L.R.B. v. Sky Wolf Sales (9th Cir. 1972) 470 F.2d 827, 830.) The status quo is measured by reference to the expired agreement itself. (See Clear Pine Mouldings, Inc., supra, at pp. 729-730.) As the court said in Peerless Roofing Co., Ltd. v. N.L.R.B., supra, “the collective bargaining agreement itself survives its expiration date for some purposes.” (641 F.2d at p. 736.) Thus, during negotiations prior to impasse an employer may not unilaterally change insurance benefits specified in an expired agreement. (Clear Pine Mouldings, Inc. v. N.L.R.B., supra, at p. 729.)
The statute discussed in these cases, section 8(a)(5) of the NLRA, provides in pertinent part that it shall be an unfair labor practice for an employer “to refuse to bargain collectively with the representatives of his employees . . . .” Section 8(a)(5) is obviously not identical to section 3505, which expressly requires an employer to “consider fully such presentations as are made by the employee organization on behalf of its members prior to arriving at a determination of policy or course of action.” Despite their lack of identity, the state and federal statutes serve the same purpose: to require an employer to negotiate with employees before implementing decisions that are properly the subject of bargaining. Because section 8(a)(5) of the NLRA serves the same purpose as section 3505 of the MMBA, we believe the federal cases cited above are properly applied to our construction of section 3505. (See International Brotherhood of Electrical Workers v. City of Gridley, supra, 34 Cal.3d at pp. 202-203.)
In the instant case the expired MOU’s required City to provide a certain level of insurance benefits, not to make a specific amount of premium contributions. When City unilaterally began to extract monetary contributions from employees to pay for the benefits it was obligated to supply under the expired MOU’s, it disturbed the status quo. (Clear Pine Mouldings, Inc. v. N.L.R.B., supra, 632 F.2d at p. 729.) City’s unilateral extraction of the contributions violated section 3505’s commands that City meet and confer in good faith and that it fully consider a presentation by plaintiff prior to arriving at a course of action.
II
City also contends the trial court improperly issued a writ of mandate.
City first contends it had no ministerial duty to provide the insurance benefits because the MOU’s had expired. However, City mistakes the origin *820 of its duty. Its obligation is not premised on the expired agreements per se but rather on its duty to maintain the status quo during negotiations under section 3505. It is settled that a writ of mandate will lie to compel a city to pay benefits not encompassed by an agreement when the benefits are mandated by provisions of the MMBA. (See San Leandro Police Officers Assn. v. City of San Leandro (1976) 55 Cal.App.3d 553, 556-558 [127 Cal.Rptr. 856]; see also Coan v. State of California (1974) 11 Cal.3d 286, 291 [113 Cal.Rptr. 187, 520 P.2d 1003]; Tevis v. City and County of San Francisco (1954) 43 Cal.2d 190, 198 [272 P.2d 757].)
City also argues the writ was unlawfully granted because the employees had an adequate remedy at law in the form of an action for damages for the increased costs of insurance unlawfully charged by City. For present purposes, we assume arguendo the employees had a remedy in damages for amounts unlawfully withheld from their paychecks.
Code of Civil Procedure section 1086 provides in pertinent part, “The writ [of mandate] must be issued in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law.” Whether a plain, speedy and adequate remedy exists at law is a question primarily within the trial court’s discretion. (Wyman v. Municipal Court (1951) 102 Cal.App.2d 738, 741 [228 P.2d 89]; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, §§ 42, 92, pp. 3817, 3867.) In this case the trial court could reasonably conclude City’s unlawful extraction of insurance premiums from employees would have an effect on the bargaining process that would transcend the employees’ out-of-pocket losses. But for intervention of the writ, plaintiff would have had to bargain for elimination of the premiums unlawfully withheld from employees’ paychecks. The trial court did not abuse its discretion by implicitly concluding the effect of City’s unlawful action on the bargaining process could not be calculated with reasonable economic certainty, so that a damages remedy was inadequate.
Finally, City contends the trial court improperly interfered with labor negotiations by “short-circuiting” the bargaining process. City asserts the trial court gave the employees a benefit without giving a corresponding benefit to their employer. We believe City has things backwards. City should not be able to undertake an unlawful act to gain bargaining leverage in negotiations. The courts have not hesitated to issue writs of mandate to correct plainly unlawful practices undertaken by public employers during negotiations subject to the MMBA. (See, e.g., International Brotherhood of Electrical Workers v. City of Gridley, supra, 34 Cal.3d at p. 196; Chula Vista Police Officers’ Assn. v. Cole (1980) 107 Cal.App.3d 242, 250 [165 Cal.Rptr. 598].) The trial court properly issued the writ.
*821 Disposition
The judgment is affirmed.
Regan, Acting P. J., and Blease, J., concurred.

 All statutory references are to the Government Code unless otherwise indicated.